Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002997
12-DEC-2016
09:10 AM

NO. CAAP-13-0002997

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellant,
v.
CORINNE KING, Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5DTA-13-00062)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Leonard and Reifurth, JJ.)

INTRODUCTION

I.

Plaintiff-Appellant State of Hawaiʻi (State) charged Defendant-Appellee Corinne King (King) with operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and/or (a)(3) (2007).[1] King moved to suppress evidence obtained after the

---

[1] HRS § 291E-61(a)(1) and (3) provide:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

. . . [or]

(continued...)

police effected a traffic stop of her SUV.

At a hearing on the suppression motion, Officer MacKenzie Metcalfe (Officer Metcalfe) testified that in the evening, while off-duty, he was a passenger in a friend's vehicle. It was already dark. According to Officer Metcalfe, he observed a white Ford SUV directly in front of him, weaving and being driven erratically. Officer Metcalfe was not able to identify the driver and believed there could be two or three people in the SUV. Officer Metcalfe called the Kaua'i Police Department (KPD) dispatch on a cell phone to report his observation of the SUV's being driven erratically. Officer Metcalfe notified dispatch that there were several people in the SUV, provided a description of the SUV and its license plate number, and directed his friend to follow the SUV. Officer Metcalfe testified that he believed he stayed on the phone with dispatch and believed he never lost visual observation of the SUV until it was pulled over by an on-duty police officer. Although Officer Metcalfe testified that he notified dispatch that there were several people in the SUV, he believed there could be two or three people in the SUV, and that he believed he had maintained constant surveillance of the SUV, when Officer Matthew Beadle (Officer Beadle) approached the SUV after effecting a traffic stop, Officer Beadle discovered that the only person in the SUV was King, who was in the driver's seat.

II.

After hearing the evidence, the District Court of the Fifth Circuit (District Court)[2] found that "[a]though officer Metcalf[e] testified he had continual surveillance of the white SUV, it appears officer Metcalf[e] did not have continual

---

[1] (...continued)

> (3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

The State also charged King with inattention to driving.

[2] The Honorable Trudy K. Senda presided.

surveillance of the vehicle, and at some point the vehicle stopped, and one or two people exited the vehicle." The District Court concluded that Officer Beadle's stop of King's vehicle, which was based on Officer Metcalfe's observations, was justified. It further concluded, however, that "much of the justification for the stop dissipated when officer Beadle found [King] was the sole occupant of the vehicle." The District Court ruled that because "Officer Beadle lacked probable cause or an articulable basis to believe that a crime had been committed [by King] before ordering [King] out of her vehicle," all evidence obtained after King exited her vehicle was ordered suppressed. It further ruled that even if Officer Beadle was justified in ordering King out of her vehicle, he lacked probable cause to arrest her, and therefore, all evidence obtained after her arrest was ordered suppressed.

III.

The State appeals from the District Court's "Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Suppress Evidence and Statements" (Suppression Order). The State contends: (1) the District Court clearly erred in finding that Officer Metcalfe did not have continual surveillance of the SUV and at some point the vehicle stopped and one or two persons exited; (2) the District Court erred in permitting King to question Officer Beadle about the activities of the SUV before Officer Beadle first saw it; (3) the District Court erred in concluding that much of the justification for Officer Beadle's stop of the vehicle dissipated when he discovered that King was the SUV's sole occupant; (4) the District Court erred in concluding that Officer Beadle's request/command to King to exit her vehicle was not supported by reasonable suspicion; and (5) the District Court erred in concluding that Officer Beadle's arrest of King was not supported by probable cause.

At the outset, we note that with very limited exceptions, the District Court's purported factual findings were not actual findings of fact, but simply recitations of the

3

witnesses' testimony. The District Court's failure, in large part, to make actual findings of fact severely impairs our ability to review the District Court's rulings. With respect to one factual finding that the District Court did make, namely, that it appears that Officer Metcalfe did not have continual surveillance of the SUV and at some point the vehicle stopped and one or two persons exited, we conclude that this finding was based on permissible inferences from the evidence and therefore was not clearly erroneous. We further conclude, however, that the presumed departure of other occupants of the SUV did not preclude the existence of reasonable suspicion to stop the SUV or to request that King undergo field sobriety tests. We therefore vacate the District Court's decision to suppress evidence relating to the field sobriety tests, which was apparently based on its conclusion that the evidence presented by the State was insufficient as a matter of law to establish reasonable suspicion for Officer Beadle to have King undergo the tests.

Excluding Officer Metcalfe's testimony that he maintained continual surveillance of the SUV, which the District Court determined was not credible, we conclude that the remaining testimony of Officers Metcalfe and Beadle was sufficient, if believed, to establish reasonable suspicion to have King exit the vehicle for field sobriety tests and to establish probable cause for King's arrest. However, because the District Court failed to make findings of fact that would show whether and to what extent it believed significant portions of the officers' remaining testimony, we are unable to complete an effective review of the District Court's rulings regarding the lack of reasonable suspicion to have King exit the vehicle to perform field sobriety tests and the lack of probable cause for King's arrest. We therefore vacate the District Court's Suppression Order and remand the case for further proceedings consistent with this Memorandum Opinion.

BACKGROUND

I.

At the hearings on King's motion to suppress evidence, the State called Officers Metcalfe and Beadle as witnesses. King did not call any witnesses. The following evidence was presented at the hearings.

A.

Officer Metcalfe testified that at about 7:00 p.m., he was a passenger in car driven by a friend traveling south on Kūhiō Highway near the Kaua'i Community Correctional Center (KCCC) in Wailua, Kaua'i. Directly in front of his car, Officer Metcalfe saw a white Ford SUV swerving in its lane and crossing the solid double yellow lines in the middle of the highway and the white fog line at the side of the highway. Officer Metcalfe called KPD dispatch on his cellular phone, reported that the SUV was being driven erratically along with a description of the SUV and is license plate number, and directed the driver of his car to follow the SUV. Officer Metcalfe's car followed the SUV from near the KCCC in Waialua, through Hanamā'ulu, down and up Kapaia Hill, past Wilcox Hospital, past Ahukini junction, down the Mill Bridge area, past Kukui Grove, and until the SUV was pulled over by an on-duty police officer on Nuhou Road in Līhu'e fronting the Chiefess Kamakahelei Middle School. While following the SUV, Officer Metcalfe observed the SUV crossing the yellow lines and fog line several times, make "a really wide turn" at the junction of Kapule and Kūhiō, nearly hit a stop sign at Kapaia Road, drive in the center of two lanes, and stop at a red light thirty yards away from the stop line.

As he followed the SUV, Officer Metcalfe stayed on the phone and contemporaneously reported his observations to the police dispatcher. Officer Metcalfe was concerned that the SUV driver would lose control of the vehicle and become involved in a traffic collision resulting in injury or death. Officer Metcalfe indicated that he followed the SUV for a long distance due to the delay in an on-duty officer responding to his call to dispatch.

When Officer Metcalfe first observed the SUV, it was already dark outside. Officer Metcalfe testified that while following the SUV, he was not able to identify the driver of the SUV. He testified that he notified dispatch that there were several people inside the SUV and that from what he could see, he "believe[d] there could be two to three" people in the SUV.[3] According to Officer Metcalfe, he was directly behind the SUV "the whole time" and believed he "never lost visual observation of it" from the time he first observed it until the SUV was pulled over by a patrol officer.

B.

Officer Beadle testified that while on duty in his patrol car, at about 7:40 p.m., he saw an SUV that matched the description and license plate number of the SUV that Officer Metcalfe had reported to dispatch was swerving all over the road. Approximately 20 to 30 seconds after he first observed the SUV, Officer Beadle activated his emergency blue lights and gave a short siren blast to signal to the SUV to pull over. The SUV did not pull over immediately but took some time to get to the

---

[3] Officer Metcalfe testified on cross-examination as follows:

Q. Now, somewhere during the following [of] the [SUV], you notified dispatch that several subjects were inside the vehicle as you were approaching Ahukini and Kuhio?

A. I did.

Q. So, from what you could see, how many people were in the vehicle?

A. At the time, I believe there could be two to three.

Q. You weren't able to identify the driver of the vehicle at that point, right?

A. No, no I was not.

Q. And, in fact, you weren't able to identify the vehicle at all during your time following the vehicle, correct?

A. Identify the vehicle itself?

Q. The driver of the vehicle.

A. Oh, no, sir.

side of the road and stop, which indicated to Officer Beadle that the operator of the SUV might be impaired. The SUV traveled about a tenth of a mile from the time Officer Beadle first observed it until the SUV pulled over. Officer Beadle effected the traffic stop based on the information that had been relayed to him; he did not personally observe the SUV being driven erratically or violate any traffic laws.

Upon approaching the SUV, Officer Beadle found King "behind the wheel" and that there was no one else in the vehicle. King said she had come from a birthday party at Aloha Beach. Officer Beadle noticed that King's speech was slurred and that her eyes were glassy and watery. King had a "hard time retrieving her driver's license[,]" fumbled through her wallet and credit cards to locate it, "seemed a little disoriented," and had trouble pulling the license out of its slot in the wallet. At that point, Officer Beadle had not detected the smell of alcohol.[4]

Officer Beadle asked King "if she would be willing to submit to a standardized field sobriety test," and "[King] said she would." Officer Beadle instructed King to stay by his side and follow him to the parking lot area of Chiefess Kamakahelei School. King stumbled as she was walking and had to be redirected towards the parking lot area, as she would veer away from where Officer Beadle wanted her to go. King exhibited very poor coordination, and it appeared to Officer Beadle that she was under the influence of some sort of intoxicant. Before conducting the field sobriety tests, Officer Beadle asked King if she had any physical impairments or was taking medication. King stated that she had a metal plate in her neck, had three rods in her back, had undergone hip replacement surgery, and was taking certain medications; she did not say that her physical ailments or medications would affect her ability to perform the field sobriety tests.

_____

[4] Officer Beadle first detected an odor of alcohol emanating from King after she was arrested and was being placed in a vehicle.

7

With respect to the walk-and-turn test, Officer Beadle instructed King on how to perform the test and demonstrated it for her. King stated that she understood Officer Beadle's instructions. Officer Beadle started the test but had to stop it because King lost her balance and stepped off the line several times. This indicated to Officer Beadle that King was under the influence of an intoxicant. Because King was not able to safely complete the walk-and-turn test -- she kept losing her balance -- Officer Beadle, at the direction of his supervisor, who was present at the scene, terminated the walk-and-turn test and did not ask King to perform the one-leg stand test. Officer Beadle opined that he had reason to believe that King was under the influence of an intoxicant and that she did not appear to be able to safely operate her vehicle. Officer Beadle placed King under arrest.

II.

After the evidence had been presented, the District Court orally ruled:

> The Court finds that there was -- that the stop of the vehicle, the traffic stop of Ms. King's vehicle was lawful. There wasn't any problem with that. But based on the testimony and the totality of evidence what was presented to the Court, the Court doesn't find that the officer was lawfully justified in seizing the Defendant and having her removed from the vehicle and then engaging in the [Standardized Field Sobriety Tests].
>
> And that resulted in the arrest. So, the Court doesn't find that the officer had specific articulable facts to base an arrest of the Defendant. So, again, I'm finding that the stop was justified and he was entitled to rely on what would normally be hearsay, which was information coming from dispatch. But there was nothing that occurred -- or there was insufficient evidence, insufficient facts that you could specify that pointed to an indication that Ms. King had committed a crime.
>
> And so he wasn't entitled to order her out of the vehicle and effect an arrest. And based on that, the Court is going to grant the motion to suppress.

The District Court asked defense counsel to draft findings and an order granting the motion to suppress. The District Court clarified that everything after King stepped out

8

of her vehicle was being suppressed. The District Court indicated that evidence obtained before that point, including what Officer Beadle observed while King remained in the SUV, such as the manner in which she retrieved her driver's license, was not being suppressed.

The District Court issued its written Suppression Order on August 13, 2013. In its Suppression Order, the District Court concluded:

> 1. The stop of Defendant's vehicle by officer Beadle was justified. Justification for the stop was based primarily on the observations of officer Metcalf[e] as they were relayed to him by KPD dispatch. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, much of the justification for the stop dissipated when officer Beadle found Defendant was the sole occupant of the vehicle. Based on the information provided by officer Metcalf[e], officer Beadle did not have any evidence that Defendant was operating the vehicle at the time officer Metcalf[e] observed the erratic operation of the white SUV.

> 2. Officer Beadle lacked probable cause or an articulable basis to believe a crime had been committed before ordering Defendant out of her vehicle. Accordingly, any and all evidence observed or recovered after Defendant exited her vehicle is suppressed and precluded from use at trial. State v. Kim, 68 Haw. 268, 711 P.2d 1291 (Hawaii 1985).

> 3. Assuming arguendo, that officer Beadle had justification to order Defendant out of her vehicle, this Court concludes that officer Beadle lacked probable cause, at the time he placed Defendant under arrest, for the offense of Operating a Vehicle Under the Influence of an Intoxicant. Accordingly, any and all evidence recovered subsequent to the arrest of Defendant is suppressed and precluded from use at trial. State v. Ito, 90 Hawaii 225, 978 P.2d 191, (Hawaii App. 1999).

## DISCUSSION

### I.

The Suppression Order lists twenty-nine "findings of fact." However, as previously noted, the vast majority of the District Court's purported factual findings were not actual findings of fact, but simply recitations of the witnesses' testimony. As an example, Finding of Fact (FOF) 3 states: "Officer Metcalf[e] testified that he observed a white SUV vehicle directly in front of the vehicle he was in. Officer Metcalf[e] testified that he saw the white SUV driving

9

erratically and notified KPD dispatch via his cellular telephone." (Emphasis added.) Simply recounting what a witness has testified to is not a finding of fact. See Richardson v. Richardson, 8 Haw. App. 446, 454, 808 P.2d 1279, 1284 (1991) ("[A] trial court's statement of a party's or a witness's testimony is not a finding of fact because it does not say it is a fact nor does it in any other way decide the crucial question of credibility.").[5/]

The questions of whether reasonable suspicion for an investigative stop or probable cause for an arrest exists depend upon the evaluation of the totality of the circumstances. See State v. Prendergast, 103 Hawai'i 451, 455, 83 P.3d 714, 717 (2004); State v. Ferrer, 95 Hawai'i 409, 431, 23 P.3d 744, 766 (App. 2001). The District Court's failure to make actual findings of fact that explain the circumstances it found were present in ruling on these questions severely impairs our ability to review the District Court's suppression rulings.

II.

We first address one the few actual findings of fact that the District Court did make. In FOF 16, the District Court found: "Although officer Metcalf[e] testified he had continual surveillance of the white SUV, it appears officer Metcalf[e] did not have continual surveillance of the vehicle, and at some point the vehicle stopped, and one or two persons exited the vehicle." The State argues that FOF 16 was clearly erroneous. We disagree.

At the suppression hearing, Officer Metcalfe testified that he believed he had maintained continual surveillance of the SUV, that he notified dispatch that there were several people in the SUV, and that he believed there could be two or three people in the SUV. However, Officer Beadle testified that when he

---

[5/] In Richardson, we proceeded on appeal with the assumption that the family court had decided that the testimony cited in its findings was credible. Richardson, 8 Haw. App. at 454, 808 P.2d at 1284. It is not clear that such an assumption would be correct in this case, and we decline to treat the District Court's references to witnesses' testimony as findings of fact.

pulled the SUV over, King was the only person in the SUV. As the State acknowledges, the evidence presented raises two possible explanations: (1) Officer Metcalfe was mistaken about the number of people in the SUV; or (2) between the time that Officer Metcalfe reported seeing two or three occupants in the SUV and when Officer Beadle pulled it over, the SUV stopped and one or two occupants got out -- that is, Officer Metcalfe was wrong about having maintained continual surveillance of the SUV.

The State argues that given the evidence that it was dark, the indications that Officer Metcalfe did not have a clear view of the interior of the SUV, and Officer Metcalfe's testimony that he believed he maintained continual surveillance of the SUV from the time he first saw it until it was pulled over, "the only reasonable inference" from the evidence presented was that Officer Metcalfe was "simply wrong about the precise number of occupants in the white SUV." We are not persuaded by this argument.

Although the inference that Officer Metcalfe was mistaken about the number of occupants he believed he saw is a reasonable inference that can be drawn from the evidence, it is not the only reasonable inference that can be drawn. And while we may not have drawn the same inference as the District Court, we cannot say that the inference that it drew -- that "it appears officer Metcalf[e] did not have continual surveillance of the vehicle, and at some point the vehicle stopped, and one or two persons exited the vehicle" -- was impermissible. Accordingly, we conclude that FOF 16 was not clearly erroneous.

III.

The State argues that the District Court erred in permitting King, over the State's objection, to cross-examine Officer Beadle about the activities of the SUV before Officer Beadle first saw it. In particular, the District Court permitted King to cross-examine Officer Beadle about Officer Metcalfe's observations, such as asking Officer Beadle to explain why only King was found in the SUV after it was pulled over, when Officer

11

Beadle had received reports from dispatch that were based on Officer Metcalfe's observations which indicated that Officer Metcalfe had maintained constant surveillance of the SUV and had seen two or three people inside the SUV.

The State argues that the District Court erred in overruling its objections to such questioning -- objections it made on the grounds of lack of personal knowledge and calling for speculation. King contends that any error was harmless because it did not affect the District Court's ultimate decision to grant King's suppression motion. We agree that any error in permitting King's questioning was harmless. King's line of questioning simply highlighted the discrepancy between Officer Metcalfe's testimony regarding his maintaining continual surveillance of the SUV and observing two or three occupants and the evidence that only King was found in the SUV when it was pulled over. This discrepancy, however, existed and was apparent based on evidence that was independent of King's challenged cross-examination of Officer Beadle. Accordingly, we conclude that any error in permitting King's cross-examination did not affect the District Court's ultimate decision to grant the suppression motion.

IV.

Absent findings of fact that explain the circumstances relied upon by the District Court in its suppression rulings, we cannot completely review whether the District Court erred in its suppression rulings. Despite this inability, we could affirm the District Court if, as a matter of law, the evidence presented by the State, when combined and considered with the findings actually made by the District Court, was insufficient to establish reasonable suspicion to further the investigative stop of King by having her exit the SUV to perform field sobriety tests or to establish probable cause for her arrest. See State v. Ross, 89 Hawai'i 371, 378 n.4, 974 P.2d 11, 18 n.4 (1998) ("An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance." (internal

12

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

quotation marks and citation omitted)). We therefore consider whether the State presented sufficient evidence on these points.

A.

The State argues that the District Court erred in concluding that much of the justification for Officer Beadle's stop of the SUV dissipated when he discovered that King was the SUV's sole occupant. The District Court relied on this conclusion in suppressing evidence obtained after King exited the SUV, including her performance on the field sobriety tests. The thrust of the State's argument is that the District Court was wrong in concluding that the discovery of King as the sole occupant of the SUV meant that the State lacked reasonable suspicion to further its investigation by having King exit her vehicle and perform the field sobriety tests.

The District Court's analysis in reaching its suppression rulings is not a model of clarity. The District Court concluded that Officer Beadle's stop of King's vehicle was justified. The District Court, therefore, must have determined that there was reasonable suspicion to stop the SUV to conduct a brief investigation to confirm or dispel the suspicion of criminal conduct. The District Court also apparently determined that the investigative stop remained valid until King exited the SUV, as it orally stated that observations made by Officer Beadle while King remained in the SUV were not being suppressed and its Suppression Order only suppressed evidence obtained after King exited the SUV. The District Court, however, concluded that much of the justification for the stop dissipated when Officer Beadle found that King was the sole occupant of the vehicle. The District Court relied on this conclusion to suppress evidence obtained after King exited the vehicle.

B.

In conducting our sufficiency of the evidence analysis, we accept any factual findings actually made by the District Court and assume that except for FOF 16, the District Court believed the remaining testimony of Officers Metcalfe and Beadle.

13

We apply these ground rules in our analysis of the sufficiency of the evidence in Sections IV.B.1. and B.2. We do not decide what the result would be if the District Court did not believe aspects of the officers' remaining testimony.

1.

We conclude that the State presented sufficient evidence to establish reasonable suspicion to have King exit her vehicle to perform field sobriety tests. At the suppression hearing, the State presented evidence that Officer Beadle pulled over an SUV that matched the description and license plate number of an SUV that Officer Metcalfe had been following and which he observed being driven in an erratic and dangerous manner. When Officer Beadle stopped the SUV, King was the driver and sole occupant of the vehicle. During the stop of the vehicle, and before King exited the vehicle, Officer Beadle obtained evidence that served to corroborate the view that King had been the person driving the SUV in the erratic and dangerous manner described by Officer Metcalfe. King was the person who was driving the SUV when Officer Beadle stopped it, and she said she had come from a birthday party at Aloha Beach. Officer Beadle observed clear signs that King's ability to drive was impaired due to an intoxicant, including that King's speech was slurred, her eyes were glassy and watery, and she exhibited diminished motor skills and seemed disoriented in retrieving her driver's license, as she fumbled through her wallet and had difficulty locating and removing her license. The slow manner in which King reacted to Officer Beadle's signals to pull over also indicated to Officer Beadle that King may be driving while impaired.

In concluding that Officer Beadle lacked reasonable suspicion to justify furthering the investigation by having King exit her vehicle to perform field sobriety tests, the District Court relied on Officer Beadle's discovery of King as the vehicle's sole occupant when Officer Metcalfe had reported his belief that two or three people were in the vehicle. From this evidence, the District Court inferred and found in FOF 16 that

14

Officer Metcalfe had apparently not maintained continual surveillance of the SUV and that the SUV had stopped and one or two people had exited before Officer Beadle effected his traffic stop. However, the purported exiting of one or two people from the SUV does not negate a reasonable suspicion that King, the person who was found in the SUV, had been responsible for the erratic and dangerous driving which Officer Metcalfe had observed. Moreover, the observations made by Officer Beadle in effecting the traffic stop and while King remained in the SUV not only corroborated the view that King was responsible for the prior erratic driving observed by Officer Metcalfe, but also provided specific and articulable facts that King was impaired due to an intoxicant. We conclude, under the totality of circumstances, and notwithstanding the District Court's FOF 16, that the State presented sufficient evidence to establish reasonable suspicion that King had committed the crime of OVUII and for the police to further its investigation by having King exit the SUV and perform field sobriety tests.

It appears that the District Court concluded that its FOF 16 meant that other evidence presented by the State, as a matter of law, was insufficient to establish reasonable suspicion to have King proceed with the field sobriety tests. The District Court erred to the extent that it based its suppression ruling on this reasoning.

The State challenges the District Court's Conclusion of Law (COL) 2, which states, in relevant part, that "Officer Beadle lacked probable cause or an articulable basis to believe a crime had been committed before ordering Defendant out of her vehicle."[6] The reasonable suspicion standard is the standard that applies in deciding whether Officer Beadle could lawfully order King out of her car. See Kernan v. Tanaka, 75 Haw. 1, 37-

---

[6] It is not clear on what basis the District Court concluded that Officer Beadle ordered King out of her vehicle. Officer Beadle testified that he asked King "if she would be willing to submit to a standardized field sobriety test," and "[King] said she would."

15

40, 856 P.2d 1207, 1225-26 (1993); State v. Silva, 91 Hawai'i 111, 115-17, 979 P.2d 1137, 1141-43 (App. 1999). As we have concluded, the State presented sufficient evidence to show that the police had reasonable suspicion to believe that King had committed the crime of OVUII before having King exit her vehicle to perform field sobriety tests.

2.

We conclude that the State presented sufficient evidence to show that Officer Beadle had probable cause to believe that King had committed the offense of OVUII when he placed her under arrest. King was driving the SUV when it was pulled over by Officer Beadle. Officer Beadle observed that King's speech was slurred, her eyes were glassy and watery, and she had a "hard time" producing her driver's license. In walking with Officer Beadle to a parking lot to undergo field sobriety tests, King stumbled as she was walking, veered away from Officer Beadle, and had to be redirected toward the parking lot. Officer Beadle had to terminate the walk-and-turn test because King kept losing her balance and stepping off the line. We conclude that the State presented sufficient evidence to warrant a person of reasonable caution to believe that King had committed the offense of OVUII at the time she was arrested. See State v. Maganis, 109 Hawai'i 84, 86, 123 P.3d 679, 681 (2005).

V.

Based on the foregoing, we conclude that excluding Officer Metcalfe's testimony that he maintained continual surveillance of the SUV, which the District Court determined was not credible, and taking into account the actual findings of fact made by the District Court, the State presented sufficient evidence that, if believed, would establish reasonable suspicion to have King exit her vehicle to perform field sobriety tests and to establish probable cause for King's arrest. However, because the District Court largely failed to make actual findings of fact that would show what testimony it believed and would explain what circumstances it found were present in ruling on King's

16

suppression motion, we are unable to completely and effectively review the Suppression Order.  We vacate the Suppression Order and remand the case for further proceedings consistent with this Memorandum Opinion.

Dated:  Honolulu, Hawai'i, December 12, 2016.

On the briefs:

Tracy Murakami
Deputy Prosecuting Attorney
County of Kauai
for Plaintiff-Appellant

Daniel G. Hempey
(Hempey & Meyers LLP)
for Defendant-Appellee

Chief Judge

Associate Judge

Associate Judge

17